UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
MAR 2 2020
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

DALJEET SINGH,

           Petitioner,

    v.

WILLIAM P. BARR, Attorney General,
et al.,

           Respondents.

**DECISION AND ORDER**

1:19-CV-01096 EAW

## <u>INTRODUCTION</u>

*Pro se* petitioner Daljeet Singh ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility in Batavia, New York, seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241 (Dkt. 1), and has also filed a motion for parole/bond or administrative bond (Dkt. 9). Petitioner contends that he is detained pursuant to 8 U.S.C. § 1226(a), and that he is entitled to release, or in the alternative, a bond hearing. (*Id.* at 2; Dkt. 7 at 4). For the reasons that follow, the Court finds that Petitioner is detained pursuant to 8 U.S.C. § 1225(b) but nonetheless, while not entitled to immediate release, Petitioner is entitled to an individualized bond hearing at which the Government bears the burden of proving by clear and convincing evidence that he poses either a risk of flight or a danger to the community. Accordingly, the Court grants the Petition (Dkt. 1) in part and denies it in part, and denies the motion for parole/bond or administrative bond (Dkt. 9).

- 1 -

# BACKGROUND

## I.    Factual Background

Petitioner is a native and citizen of India. (Dkt. 5-1 at ¶ 5). He illegally entered the United States on June 12, 2018, with 16 other individuals, and he was in the United Stated approximate 2.5 miles west of the Otay Mesa, California Port of Entry and 50 yards north of the United States border with Mexico when he was apprehended by a Customs and Border Patrol ("CBP") agent. (*Id.*). Petitioner admitted to unlawfully entering the United States from Mexico on June 12, 2018, by climbing over the border fence north of Tijuana, Mexico. (*Id.*). On June 13, 2018, Petitioner was served with a Notice of Expedited Removal and was found to be inadmissible for illegally entering the United States, but he claimed a fear of torture or persecution if returned to India. (*Id.* at ¶ 6). An asylum officer determined Petitioner expressed a credible fear of persecution, and Petitioner was placed in full removal proceedings by a Notice to Appear served on September 12, 2018, charging him as subject to removal pursuant to 8 U.S.C. § 1182(a)(7)(i)(I) and (a)(6)(A)(i). (*Id.* at ¶ 7).

On September 12, 2018, the Department of Homeland Security ("DHS") performed a custody determination with respect to Petitioner and made the decision to continue his detention pending a final administrative determination of his immigration case. (*Id.* at ¶ 8). Petitioner requested that an immigration judge ("IJ") review the custody determination, and a bond hearing was scheduled for December 6, 2018. (*Id.*). On November 26, 2018, Petitioner's attorney requested that the custody hearing be rescheduled to December 20, 2018, and the request was granted. (*Id.* at ¶ 9). On December 20, 2018, Petitioner appeared

before the IJ for a master calendar hearing and a bond hearing. (*Id.* at ¶ 10). The bond hearing was re-set for February 19, 2019, and the master calendar hearing was continued until April 1, 2019. (*Id.*). Petitioner was also served with an asylum notice. (*Id.*).

On January 5, 2019, Petitioner's attorney filed a motion to withdraw, which the IJ granted on January 18, 2019. (*Id.* at ¶ 11). Petitioner appeared before the IJ with new counsel on February 19, 2019, for the bond hearing, which was continued until March 26, 2019, at the request of Petitioner's counsel. (*Id.* at ¶ 12). The bond hearing was again rescheduled for April 18, 2019. (*Id.* at ¶¶ 13-14). On April 18, 2019, the IJ conducted a bond hearing and denied Petitioner's request for a change in custody status. (*Id.* at ¶ 14). A merits hearing was also conducted and continued until May 23, 2019. (*Id.* at ¶ 15). On May 16, 2019, Petitioner appealed the IJ's bond decision to the BIA. (*Id.* at ¶ 16). Petitioner and his attorney appeared before the IJ on May 23, 2019, and additional testimony was presented. (*Id.* at ¶ 17). The merits hearing continued on July 1, 2019, and the IJ denied Petitioner's applications for relief from removal and ordered him removed to India. (*Id.* at ¶ 18). Petitioner appealed the IJ's order of removal (*id.* at ¶ 19), and the BIA denied Petitioner's appeal of the removal decision (Dkt. 8). Petitioner filed a petition for review with the Second Circuit on December 26, 2019. Petition for Review of Agency Order, *Singh v. Barr*, No. 19-4312, Dkt. 1 (2d Cir. Dec. 26, 2019). On February 28, 2020, the Second Circuit granted Petitioner a temporary stay of removal pending review of Petitioner's petition for review. *Singh v. Barr*, No. 19-4312, Dkt. 43 (2d Cir. February 28, 2020).

## II.    Procedural Background

Petitioner filed his Petition on August 19, 2019. (Dkt. 1). Respondents filed their answer and opposition to the Petition on October 7, 2019 (Dkt. 5; Dkt. 6), and Petitioner's reply was filed on October 28, 2019 (Dkt. 7). Petitioner submitted a status update regarding his petition for review on January 6, 2020 (Dkt. 8), and filed a motion for parole/bond or administrative bond on February 14, 2020 (Dkt. 9).

## DISCUSSION

## I.    Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

## II.   Detainment Under § 1225(b) or § 1226(a)

Petitioner argues that the Government is detaining him pursuant to § 1226(a), and as a result he is entitled to a bond hearing wherein the Government bears the burden of proving by clear and convincing evidence that Petitioner should be detained.   The Government argues Petitioner is detained pursuant to § 1225(b).  For the following reasons, the Court finds Petitioner is detained pursuant to § 1225(b).

"Section 1225 applies to two types of aliens: 'arriving aliens' and 'certain other aliens.'" *Dorval v. Barr*, No. 6:19-CV-06545-MAT, 2019 WL 5079566, at *3 (W.D.N.Y. Oct. 10, 2019); *see* 8 U.S.C. § 1225(b) ("Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled.").  Regulations define an arriving alien as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1001.1(q).  Pursuant to § 1225, "arriving aliens" are subject to expedited removal proceedings "without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). If the "arriving alien" does so indicate, "the officer shall refer the alien for an interview by an asylum officer." *Id.* § 1225(b)(1)(A)(ii).

With regards to "certain other aliens," § 1225(b)(1)(A)(iii), titled "Application to certain other aliens," states:

(I) In general
The Attorney General may apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.

(II) Aliens described
An alien described in this clause is an alien . . . who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

When the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, was passed, the Attorney General's authority under § 1225(b)(1)(A)(iii)(I) was delegated to the Secretary of DHS. In 2004, DHS used this authority to designate as "certain other aliens" the following:

Aliens determined to be inadmissible under sections 212(a)(6)(C) or (7) of the Immigration and Nationality Act who are present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration officer within 100 air miles of the U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the fourteen-day (14-day) period immediately prior to the date of encounter.

Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004) (hereinafter "Certain Other Aliens Rule"). In other words, aliens who illegally entered the United States and are detained within 14 days of entry and within 100 miles of the border are treated the same as "arriving aliens" under the current statutory and regulatory scheme.

If an immigration officer determines during an interview that either an "arriving alien" or "certain other alien" has a credible fear of persecution, "the alien shall be detained

for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *see* Certain Other Aliens Rule, 69 Fed. Reg. at 48879 ("All aliens placed into expedited removal as a result of this designation will have the same rights to a credible fear screening by an asylum officer[.]"). This detention places aliens in full removal proceedings pursuant to 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(2)(A). If the asylum officer finds the alien does not have a credible fear, the alien can request review of that determination by an IJ. 8 C.F.R. § 1208.30(g). Additionally, "[a]liens detained pursuant to Section 1225(b) may be awarded discretionary parole into the country by the Attorney General, pending their application to be admitted or for asylum." *Dorval*, 2019 WL 5079566, at *5; *see* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(a) & (b)(5).

In contrast, "[s]ection 1226 generally governs the process of arresting and detaining [aliens present in the country] pending their removal." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). Additionally, under § 1226(a) the Attorney General "may release the alien" detained pursuant to § 1226 either on bond or under conditional parole.

Given the statutory framework described above, the Court concludes that Petitioner is a "certain other alien" detained pursuant to § 1225(b) as opposed to an alien detained pursuant to § 1226(a). Petitioner was detained within 100 miles of the border and within 14 days of his entry into the United States. (Dkt. 5-1 at ¶ 5). Additionally, Petitioner established a credible fear of persecution and was subsequently detained. (*Id.* at ¶ 7). Accordingly, the Court finds Petitioner is detained under § 1225(b).

## III.    Due Process

Petitioner argues that he is entitled to a bond hearing where the Government bears the burden of proving by clear and convincing evidence that he poses a risk of flight or a danger to the community.  Respondents contend that Petitioner has not exhausted his administrative remedies, and that Petitioner's mandatory detention pursuant to § 1225(b) is lawful in any event.  The Court finds due process entitles Petitioner to a bond hearing where the Government bears the burden of proof.

### A.    Exhaustion

"There is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus; however, such exhaustion is generally required as a prudential matter." *Paz Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751, at *1-2 (S.D.N.Y. Jan. 23, 2017) (collecting cases). "Exhaustion of administrative remedies may not be required when: (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)); *see Compunnel Software Grp., Inc. v. Gupta*, No. 14 Civ. 4790(SAS), 2015 WL 1224298, at *4 (S.D.N.Y. Mar. 17, 2015) ("The exhaustion doctrine, however, is also subject to numerous exceptions.").

Respondents argue that the Court should not entertain Petitioner's due process arguments because Petitioner's appeal of the IJ's bond decision is pending before the BIA.

(Dkt. 6 at 12-13). It is unclear from the record before the Court whether the BIA has since issued a decision regarding Petitioner's appeal of the bond decision. Regardless, the Court finds requiring Petitioner to wait for the BIA to issue a decision is not necessary for consideration of Petitioner's due process claim.

The Government contends that because the BIA's decision is not predetermined, Petitioner's failure to wait for the BIA's determination should result in dismissal of his Petition. However, administrative remedies would not properly address the claims in the Petition because Petitioner raises substantial constitutional questions regarding the burden of proof that due process requires at a bond hearing. *See Velasco Lopez v. Decker*, No. 19-CV-2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) ("[T]he BIA has no authority [to] address issues pertaining to the Constitution."), *appeal filed*, No. 19-2284 (2d Cir. July 23, 2019); *Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6075067, at *6 (S.D.N.Y. Nov. 21, 2018) ("[E]xhaustion is excused here because any administrative appeal would have been futile and unable to address [the petitioner]'s substantial constitutional claims. The two remedies Petitioner seeks in the alternative from this Court—immediate release without another bond hearing or a supplemental bond hearing with the burden of proof on the Government—are foreclosed at the BIA based on existing administrative precedent."), *appeal withdrawn*, No. 19-245, 2019 WL 3334802 (2d Cir. May 1, 2019).

Additionally, the record shows that the only viable arguments that Petitioner could make to the BIA are constitutional ones. The IJ's decision found that Petitioner posed a flight risk based on Petitioner's lack of immediate family or relatives in the United States,

his proposed sponsor's income, and lack of evidence regarding Petitioner's alleged medical issues. (Dkt. 5-2 at 33). The Petition contains no allegations that could viably refute the IJ's factual findings. Instead, Petitioner argues a clear-and-convincing-evidence burden of proof was not on the Government at the bond hearing and that the IJ should have considered alternatives to detention when assessing Petitioner's risk of flight. (Dkt. 1 at ¶ 45). As is discussed later in this Decision and Order, the Government should have been held to a clear-and-convincing-evidence burden at the bond hearing, and the IJ should have considered alternatives to detention. *See Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 242 (W.D.N.Y. 2019) ("At the very least, the IJ was required to consider possible alternatives to detention. . . . And at the very least, the IJ was required to determine whether the government's evidence demonstrated that any and all proffered alternatives to detention would not protect the public.").

Existing BIA precedent does not establish that the clear-and-convincing-evidence standard applies for bond hearings held for "certain other" aliens, nor does it establish that alternatives to detention should be considered when making a bond determination. *See Velasco Lopez*, 2019 WL 2655806, at *3 ("Although the Government rests its laurels on the idea that the BIA altering their entire standard is a 'possibility,' the Government fails to cite any case law or give any examples of decisions by the BIA that indicate willingness or desire to alter their own policy of placing the burden on immigrants to prove, by clear and convincing evidence, that they are neither a danger to the community nor a risk of flight. Thus, this Court deems the issue of the current burden as predetermined."); *Joseph*, 2018 WL 6075067, at *6 ("Where, as here, 'the challenge is to regulations [and precedent

that are] promulgated and consistently enforced by the agency, and which the agency has either no power, or no inclination, to correct,' exhaustion is futile and thus does not serve the policies of judicial efficiency or allowing the agency to correct its own errors." (alteration in original) (quoting *Abbey v. Sullivan*, 978 F.2d 37, 45 (2d Cir. 1992))). As a result, the Court finds that requiring Petitioner to wait for the BIA to issue its decision would not provide Petitioner with a genuine opportunity for adequate relief. *See Hemans v. Searls*, No. 18-CV-1154, 2019 WL 955353, at *10 (W.D.N.Y. Feb. 27, 2019) ("Neither the immigration judge nor the BIA have jurisdiction to adjudicate the constitutionality of that burden. So giving [the petitioner] a 'typical' . . . bond hearing would not remedy the due process violation, and requiring him to seek another hearing before an immigration judge therefore would be futile." (citation omitted)); *Joseph*, 2018 WL 6075067, at *7 ("[T]his Court is convinced that it is the only entity able to address [the petitioner]'s substantial constitutional claims and that any attempt to receive relief from the agency would pointlessly prolong a detention that is already pushing constitutional bounds.").

## B. Process Due to Petitioner

### 1. Entitlement to Due Process Protections

This Court has previously found that because "certain other" aliens such as Petitioner are aliens that entered the United States, albeit unlawfully, they are entitled to due process protections. *See Gonzales Garcia v. Barr*, No. 6:19-CV-06327 EAW, 2020 WL 525377, at *8 (W.D.N.Y. Feb. 3, 2020); *see also Zadvydas*, 533 U.S. at 682 (holding that "[o]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to *all persons within the United States*, *including aliens*, whether their

presence is lawful, *unlawful*, *temporary*, or permanent." (emphases added)). Accordingly, the Court must now determine what sort of process is due to Petitioner. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Due process . . . is a flexible concept that varies with the particular situation.").

## 2. <u>Substantive Due Process</u>

Petitioner alleges that his prolonged detention has resulted in the violation of his right to substantive due process and moves for immediate release. (Dkt. 1 at ¶ 4; Dkt. 9) The Court denies the Petition on this ground as well as Petitioner's motion for parole/bond or administrative bond for the reasons that follow.

"[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty v. Thornburgh*, 943 F.2d 204, 209 (1991). "It is axiomatic, however, that an alien's right to be at liberty during the course of deportation proceedings is circumscribed by considerations of the national interest." *Id.* If the infringement on an alien's "liberty interest results from a proper exercise of discretion," then a prolonged detention "is not conduct that goes beyond the range of government activity permitted by the Constitution." *Id.* at 211. "[D]etention of an alien 'once removal is no longer reasonably foreseeable' . . . violates the Due Process Clause." *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). "[O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

In the instant matter, Petitioner has failed to demonstrate that his removal is not reasonably foreseeable. To the contrary, Petitioner would be removed if he withdrew his asylum application. Petitioner "may not rely on the extra time resulting" from his immigration proceedings "to claim that his prolonged detention violates substantive due process." *Doherty*, 943 F.2d at 211. Accordingly, the Court denies the portion of the Petition that rests on substantive due process grounds as well as Petitioner's associated request and motion (Dkt. 9) for immediate release.

### 3.    Process Due to Petitioner

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). "In determining 'what process is due,' we recognize that 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Francis v. Fiacco*, 942 F.3d 126, 142-43 (2d Cir. 2019) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

> [T]his Court applies the three-factor analysis from [*Mathews*] considering (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 143 (quoting *Mathews*, 424 U.S. at 335).

The main private interest at stake in the instant matter is Petitioner's "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Additionally, Petitioner has an interest stemming

from the IJ's ultimate determination that he has a credible fear of persecution. *See Augustin v. Sava*, 735 F.2d 32, 37 (2d Cir. 1984) ("[I]t appears likely that some due process protection surrounds the determination of whether an alien has sufficiently shown that return to a particular country will jeopardize his life or freedom so as to invoke the mandatory prohibition against his return to that country."); *Yiu Sing Chun v. Sava*, 708 F.2d 869, 877 (2d Cir. 1983) ("[A] refugee who has a 'well-founded fear of persecution' in his homeland has a protectable interest recognized by both treaty and statute, and his interest in not being returned may well enjoy some due process protection not available to an alien claiming only admission." (footnotes omitted)).

As for the Government, it has an interest in detaining aliens "to ensure that the alien will be available if he or she is determined to be deportable." *Doherty*, 943 F.2d at 211. The Government also has an interest "in efficient administration of the immigration laws at the border." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Additionally, the Government has an interest in the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "Further, it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon*, 459 U.S. at 34.

The Court now turns to Petitioner's risk of erroneous deprivation and "the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. "[T]he key to the constitutionality of a grave deprivation, of course, is that before the Government unilaterally takes away that which is sacred, it must provide *meaningful* process[.]" *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 363 (S.D.N.Y. 2019), *appeal*

*withdrawn*, No. 19-2533, 2019 WL 7944831 (2d Cir. Nov. 27, 2019); *see Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." (quotation and citation omitted)). "[T]he Supreme Court has reiterated that regardless of what provisions and procedures Congress enacts pursuant to its 'plenary power' to create immigration law, that power is always subject to constitutional limitations." *Martinez*, 385 F. Supp. 3d at 364; *see Zadvydas*, 533 U.S. at 695 (citing *INS v. Chadha*, 462 U.S. 919, 941-42 (1983), for the proposition that Congress must choose "a constitutionally permissible means of implementing" that power).

In the instant matter, Petitioner was provided a bond hearing where he bore the burden of proving that he was not a risk of danger to the community or a flight risk. The other process available to Petitioner is the opportunity to apply for discretionary parole pursuant to 8 U.S.C. § 1182(d)(5). The Court finds that the risk of erroneous deprivation of Petitioner's liberty under both of these procedures is high.

The Court follows the logic of the majority of courts in this Circuit and finds that "[b]ecause the grant of parole pursuant to § 1182(d)(5)(A) is 'entirely discretionary,' with discretion vested in the same agency charged with removing inadmissible aliens, 'it provides no actual due process protection'" to Petitioner as a "certain other" alien facing indefinite detention under § 1225(b). *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *12 n.14 (S.D.N.Y. Dec. 27, 2018) (quoting *Birch v. Decker*, No. 17-CV-6769 (KBF), 2018 WL 794618, at *7 (S.D.N.Y. Feb. 7, 2018)); *see Gonzales Garcia*, 2020 WL 525377, at *10-12.

The Court also finds that the bond hearing already provided to Petitioner imposes a high risk of erroneous deprivation. Courts in this Circuit, including this Court, have overwhelmingly concluded that it is a violation of procedural due process to require an immigration detainee held under § 1226(a) to bear the burden of proof at his bond hearing. *See, e.g.*, *Aparicio-Villatoro v. Barr*, No. 6:19-CV-06294-MAT, 2019 WL 3859013, at \*7 (W.D.N.Y. Aug. 16, 2019) ("As to the applicable burden of proof, most courts that have decided the issue have concluded that [the] Government must supply clear and convincing evidence that the alien is a flight risk or danger to society."). Additionally, most courts within this Circuit that have found "arriving" aliens subject to prolonged detention are entitled to a bond hearing have held that the standard for such a bond hearing mirrors that accorded aliens detained under § 1226(a). *See, e.g.*, *Lett v. Decker*, 346 F. Supp. 3d 379, 389 (S.D.N.Y. 2018) ("[T]he Government must prove by clear and convincing evidence that Petitioner's continued detention is justified.").[1] Because Petitioner is a "certain other" alien who was detained after entering the United States, he is entitled to at least as much

---

[1]     The court in *Clerveaux v. Searls*, 397 F. Supp. 3d 299 (W.D.N.Y. 2019), found that the petitioner, who was an "arriving" alien, was entitled to a rigorous custody review but not necessarily a bond hearing. *Id.* at 321. The court relied on decisions often referred to as the Mariel Cuban line of cases, especially the Second Circuit's decision in *Guzman v. Tippy*, 130 F.3d 64 (2d Cir. 1997). *See id.* at 316-20. However, as other courts in this Circuit have noted, *Guzman* was decided before the Supreme Court's decision in *Zadvydas*. *See, e.g.*, *Kouadio v. Decker*, 352 F. Supp. 3d 235, 240 n.2 (S.D.N.Y. 2018). *Clerveaux* specifically references the petitioner's status as an "arriving" alien that had not yet entered the United States to explain why *Zadvydas* did not impact *Guzman*'s implications for that petitioner. 397 F. Supp. 3d at 320 n.17 ("[T]his Court fails to see how *Zadvydas* undermines the case law's distinction between 'arriving' aliens and those aliens who have 'entered' the United States—legally or illegally."). Accordingly, since Petitioner is not an "arriving alien," the Court does not find the holding in *Clerveaux* to be dispositive here.

process as an "arriving alien," as well as the amount of process given to other illegal aliens detained within the United States.

Moreover, Petitioner's prolonged detention further illustrates he suffers from a high risk of erroneous deprivation. In this Circuit, in assessing the risk of an erroneous deprivation of liberty, "courts examine each individual's detention circumstances to determine whether it has become 'unreasonable or unjustified.'" *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore*, 538 U.S. at 532). The case-by-case approach is an "as-applied, fact-based analysis . . . derived from the Supreme Court's decisions in *Zadvydas* and *Demore*[.]" *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018), *appeal withdrawn*, No. 18-2591, 2019 WL 4137822 (2d Cir. May 7, 2019); *see Joseph*, 2018 WL 6075067, at *10 n.7 (concluding that "[t]he *Mathews* test is consistent with the approach of . . . considering immigration-specific factors for the procedural due process analysis," and the majority of courts in this Circuit seem to have adopted the fact-based inquiry approach). The factors set forth by district courts in this Circuit for a court to consider in determining whether an alien's length of detention has become unreasonable or unjustified, can be summed up as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.[2]

---

[2] This is not to suggest that other factors cannot be considered by a court in the appropriate case. In other words, it would be inconsistent with the flexible nature of due

*Cabral*, 331 F. Supp. 3d at 261. Although some of these factors are directed at aliens who have committed crimes in the United States and are detained pursuant to 8 U.S.C. § 1226(c), many of these factors are useful for assessing whether Petitioner's detention demonstrates a high risk of erroneous deprivation.

As to the first factor, Petitioner has been detained in immigration custody since June 2018, and has not had any sort of individualized review of his detention since April 2019. (Dkt. 5-1 at ¶¶ 5, 14). "[C]ourts in this Circuit have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Lett*, 346 F. Supp. 3d at 387 (quoting *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *14 (S.D.N.Y. June 12, 2018)), and "courts have found detention shorter than a year to be unreasonably prolonged as part of procedural due process analysis," *Rosado Valerio v. Barr*, No. 19-CV-519, 2019 WL 3017412, at *4 (W.D.N.Y. July 10, 2019) (collecting cases). That Petitioner previously had a bond hearing is not dispositive—Petitioner is entitled to a *constitutionally adequate* bond hearing, and, as previously discussed, the procedures at Petitioner's previous bond hearing did not comport with the requirements of due process. Nor can the Court determine from the record before it whether the IJ would find that the Government met its burden to demonstrate Petitioner's risk of flight by clear and convincing evidence—in addition to the evidence before the IJ at Petitioner's previous bond hearing (*see* Dkt. 5-2 at 32-33), Petitioner now submits evidence that he has a cousin

---

process, *Jennings*, 138 S. Ct. at 852, to restrict the analysis to hard-and-fast factors with no ability to adapt those factors to the particular facts of a case.

in the United States as well as a letter from a non-profit organization promising to provide Petitioner with room and board in the event that he is released on bond (Dkt. 9 at 13-14); *see Brevil v. Jones*, No. 17 CV 1529-LTS-GWG, 2018 WL 5993731, at *5 (Nov. 14, 2018) (finding petitioner "was prejudiced by the incorrect allocation of the burden of proof at his initial bond hearing" because the court could not "discern whether, had the Government had borne the burden of proof (either by a preponderance of the evidence or the higher clear and convincing evidence standard), the immigration judge would have found that the Government had met its burden to demonstrate [the petitioner's] dangerousness or risk of flight"). Thus, "[t]he first and 'most important' . . . factor weighs heavily in favor of granting the petition." *Bermudez Paiz*, 2018 WL 6928794, at *13 (citation omitted).

Respondents contend the second factor in the analysis—which party is responsible for the delay—undercuts a finding of an unreasonable length of detention in Petitioner's case because "the length of Petitioner's detention is due, in part, to his own actions." (Dkt. 6 at 15). For procedural due process claims, when "considering whether [Petitioner] or the Government is responsible for the prolonged proceedings, the Court 'may examine the record to determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals.'" *Vallejo v. Decker*, No. 18-CV-5649, 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (quoting *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018)), *appeal withdrawn*, No. 18-2881, 2019 WL 1503029 (2d Cir. Mar. 25, 2019); *see Sajous*, 2018 WL 2357266, at *11 ("[A]liens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." (quoting

*Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015))). "[C]ourts should keep in mind that 'aliens should not be punished for pursuing avenues of relief and appeals[,]' but evidence of bad faith delays may cut against them." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at \*7 (S.D.N.Y. July 25, 2018) (quotation omitted), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019).

Respondents cite to this Court's decision in *Sigal v. Searls*, No. 1:18-CV-00389 EAW, 2018 WL 5831326, at \*6 (W.D.N.Y. Nov. 7, 2018), to support their argument that Petitioner may end his detention at any time. (Dkt. 6 at 15). However, *Sigal* is distinguishable from the instant matter. The Court's decision in *Sigal* focused on the petitioner's substantive due process arguments because the forms of relief the petitioner sought in his petition and briefing were for immediate release or for the Court to actually conduct a bond hearing. (*See* Petition, *Sigal v. Searls*, No. 1:18-cv-00389-EAW, Dkt. 1 at ¶ 37 (W.D.N.Y. Mar. 28, 2018) (alleging in petition that "Petitioner is therefore entitled to immediate release on his own recognizance or under bond, by order of this court")); *see also Doherty*, 943 F.2d at 209 ("[The petitioner] does not argue that the process under which he was denied bail was unfair or inadequate, but rather, that the very fact that he has been subjected to prolonged detention without bail violates his substantive right to liberty.").

Moreover, the facts in *Sigal* are easily distinguishable from this case. The *Sigal* petitioner had been ordered removed by an IJ before ever being taken into DHS custody, and the BIA affirmed the IJ's decision within about a week after the *Sigal* petitioner was taken into DHS custody. 2018 WL 5831326, at \*2. As a result, the entire length of the

*Sigal* petitioner's custody in DHS was directly related to his pursuit of an appeal before the Second Circuit with a corresponding stay of removal. As this Court noted in *Sigal*, while a petitioner should not be punished for seeking review of administrative or judicial decisions, "that right does not mean it may be exercised without consequence," *id.* at *6 (citation and quotation omitted), and in fact, the *Sigal* petitioner's removal would not have prevented his pursuit of relief before the Second Circuit, *id.* at *6 n.5. Thus, the Court in *Sigal* was persuaded that the petitioner's litigation strategy was largely responsible for the length of his detention. In fact, shortly after this Court issued its decision in *Sigal*, the petitioner discontinued his appeal before the Second Circuit, *see Sigal v. Whitaker*, No. 17-2197, Dkt. 92, thus further confirming the Court's opinion concerning the petitioner's litigation strategy. Here, the Court is not similarly persuaded that most of Petitioner's actions reflect a litigation strategy meant to prolong his immigration proceedings. Most of the continuances requested by Petitioner and his attorney were made to help prepare for the various hearings before the IJ. Although Petitioner's initial attorney withdrew due to difficulty obtaining supporting documents for Petitioner's asylum application (Dkt. 5-2 at 19-20), the withdrawal led to only a two-month delay for the bond hearing and at most a several week delay in the removal proceedings (*id.* at ¶¶ 10-14). In other words, of the 20 months Petitioner's removal proceedings have been pending, at most several weeks could be attributed to an attempt to draw out the removal proceedings. As such, it would not be appropriate to utilize the requests for adjournment to penalize Petitioner. *See, e.g.*, *Sopo*, 825 F.3d at 1218; *Vallejo*, 2018 WL 3738947, at *4; *Hernandez*, 2018 WL 3579108, at *7; *Sajous*, 2018 WL 2357266, at *11.

As for the third factor, Petitioner has asserted defenses to removal in the immigration proceedings—he has applied for asylum. (Dkt. 5-2 at 24). "The Court need not inquire into the strength of [Petitioner's] defenses—it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the Petitioner pending a final determination as to whether he is removable." *Sajous*, 2018 WL 2357266, at *11; *see Cabral*, 331 F. Supp. 3d at 261-62 (finding the third factor weighed in petitioner's favor because he asserted several defenses to his removal); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) ("Petitioner has made a claim for asylum that could be a defense to his removal, again tilting the scales toward his unreviewed detention being unreasonable."). Accordingly, this factor weighs in Petitioner's favor.

The fourth factor—whether the detention facility is meaningfully different from a penal institution for criminal detention—is at best neutral. Respondents have submitted a declaration describing the conditions of confinement at the Buffalo Federal Detention Facility as not consisting of "the same level of restrictions typical for someone held at a prison." (Dkt. 5-3 at ¶ 7). However, even with the amenities, such as entertainment, a microwave, and a juice bar, detailed in that declaration (*id.* at ¶¶ 7-8), the reality is that the facility houses aliens against their will with various restrictions on their freedom of movement. Thus, while perhaps not akin to a maximum-security prison, for many aliens, even crediting the description set forth in the declaration, the facility does not seem meaningfully different from at least a low-security penal institution for criminal detention.

The final relevant factor, whether the petitioner's detention is near conclusion, weighs in Petitioner's favor. The briefing regarding the petition for review in the Second Circuit has not yet begun, and it is consequently unclear when the Second Circuit will issue its decision, or whether that decision will result in Petitioner's release or further proceedings. *See Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *5 (S.D.N.Y. Oct. 25, 2018) ("[T]here is 'significant reason to believe that [petitioner's detention] will continue . . . because . . . he would remain detained throughout the course of an appeal by either side.'" (second alteration in original) (quoting *Lett*, 346 F. Supp. 3d at 387)).

The Court finds that most if not all of the factors favor Petitioner. On balance and particularly in view of the length of the detention and the circumstances surrounding that detention, the Court finds that Petitioner's prolonged detention with the process that has been given to him demonstrates that his risk of erroneous deprivation is high.

Taking all of the above into consideration and weighing the *Mathews* factors accordingly, the Court finds "the 'minimal burden' that a bond hearing would place on the Government is far outweighed by [Petitioner]'s interest in 'ensur[ing] that his continued detention is justified,'" *Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *2 (S.D.N.Y. May 15, 2019) (quoting *Vallejo*, 2018 WL 3738947, at *5), and due process requires that Petitioner receive a bond hearing where the government must demonstrate dangerousness or flight risk by clear and convincing evidence. Additionally, the Court finds that both due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond. *See Abdi v. Nielsen*, 287 F.

Supp. 3d 327, 335-39 (W.D.N.Y. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 991 & n.4 (9th Cir. 2017) ("A bond determination that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests."); *Arce-Ipanaque*, 2019 WL 2136727, at *3 (collecting cases); *Lett*, 346 F. Supp. 3d at 389 ("The Court agrees with Petitioner that an immigration bond hearing that fails to consider ability to pay or alternative conditions of release is constitutionally inadequate."); *Hernandez*, 2018 WL 3579108, at *12 ("[T]he Due Process Clause requires than an IJ consider ability to pay and alternative conditions of release in setting bond." (quotation and alteration omitted)).

## CONCLUSION

For the foregoing reasons, the motion for parole/bond or administrative bond (Dkt. 9) is denied, and the Petition (Dkt. 1) is granted solely to the extent that the Court orders Respondents to afford Petitioner an individualized bond hearing consistent with the procedures outlined in this Decision and Order within 14 days of its entry. If Petitioner requests a continuance that results in a bond hearing date outside the 14-day deadline set forth above, such a continuance will be in compliance with the instant Decision and Order, as long as the new date falls within a reasonable time period. Respondents are directed to file a status update with the Court within three (3) days of the date of Petitioner's bond hearing regarding the outcome of the hearing, or on or before March 23, 2020, whichever date is earlier. The Clerk of Court is instructed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 2, 2020
        Rochester, New York